UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TIERA WHITSETT,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 16-0813 (ES)<br><br>OPINION |

SALAS, DISTRICT JUDGE

Before the Court is an appeal filed by Tiera Whitsett ("Plaintiff") seeking review of Administrative Law Judge Leonard Olarsch's ("ALJ" or "ALJ Olarsch") decision denying Plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Having considered the submissions in support of and in opposition to the present appeal, as well as the administrative record, the Court decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

I. BACKGROUND

In January 2003, at approximately ten years old, Plaintiff was found to be disabled and received SSI benefits based on disability as a child. (D.E. No. 6, Administrative Record ("Tr.") at 13). On April 2, 2012, with Plaintiff turning eighteen years old, the Commission reevaluated her eligibility for SSI benefits and determined that Plaintiff was no longer disabled. (*Id.*). Upon appeal of this redetermination, a State Agency Disability Hearing Officer upheld the reconsideration on April 26, 2013. (*Id.*). Plaintiff thereafter filed a written request to appeal the reconsideration

1

determination on June 20, 2013, which was granted. (*Id.*). On August 13, 2014, Plaintiff appeared and testified at a hearing before ALJ Olarsch. (*Id.*).

At the hearing, Plaintiff reiterated her claims of a disability due to a learning disorder. (*Id.* at 34). She explained that the disorder affected her while attending vocational school to become a medical assistant, and if she failed again, she would no longer be able to attend. (*Id.* at 33-34). She further testified that although she was able to read, she often had difficulty understanding the materials she read. (*Id.* at 38). Plaintiff also stated that her previous part-time employment at Wendy's and at the Gap outlet clothing store was stressful for her, as she was reprimanded by her supervisors for being slow. (*Id.* at 40-42). When asked by ALJ Olarsch what caused her to be slow and whether she could work these same jobs full time, Plaintiff responded that she took her time because she "want[ed] to" and that she could keep up with these jobs full time if she so desired. (*Id.* at 43-45).

On August 27, 2014, ALJ Olarsch denied Plaintiff's application, concluding that her disability had ended on March 30, 2012. (*Id.* at 13). On October 30, 2014, Plaintiff requested an Appeals Council review, which was denied on December 14, 2015. (*Id.* at 1, 6).

On February 16, 2016, Plaintiff appealed the Commissioner's decision by filing a Complaint in this Court. (D.E. No. 1). The Court received the administrative record on April 27, 2016. (D.E. No. 6). The parties briefed the issues raised by Plaintiff's appeal. (*See* D.E. No. 10, Brief in Support of Tiera Whitsett filed on August 16, 2016 ("Pl. Mov. Br."); D.E. No. 13, Defendant's Brief Pursuant to Local Civil Rule 9.1 filed on November 1, 2016 ("Def. Opp. Br.")). The matter is therefore ripe for resolution.

## II. LEGAL STANDARD

### A. Standard for Awarding Benefits

To be eligible for Disability Insurance Benefits ("DIB") under Titles II and XVI of the Act, a claimant must establish that she is disabled as defined by the Act. *See* 42 U.S.C. §§ 423 (Title II), 1382 (Title XVI). A claimant seeking DIB must also satisfy the insured status requirements set forth in § 423(c). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). The individual's physical or mental impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Act has established a five-step sequential evaluation process to determine whether a plaintiff is disabled. 20 C.F.R. § 404.1520(a)(4). If at any point in the sequence the Commissioner finds that the individual is or is not disabled, the appropriate determination is made and the inquiry ends. *Id.* The burden rests on the claimant to prove steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).[1] At step five, the burden shifts to the Commissioner. *Id.*

***Step One.*** At step one, the claimant must demonstrate that she is not engaging in any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. *Id.* §§ 416.972(a), (b). If an individual engages in substantial gainful activity, she is not disabled under the regulation,

---

[1] Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

regardless of the severity of her impairment or other factors such as age, education, and work experience. *Id*. § 404.1520(b). If the claimant demonstrates she is not engaging in substantial gainful activity, the analysis proceeds to the second step.

***Step Two.*** At step two, the claimant must demonstrate that her medically determinable impairment or the combination of impairments is "severe." *Id.* § 404.1520(a)(4)(ii). A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Slight abnormalities or minimal effects on an individual's ability to work do not satisfy this threshold. *See Leonardo v. Comm'r of Soc. Sec.*, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. Nov. 16, 2010).

***Step Three.*** At step three, the ALJ must assess the medical evidence and determine whether the claimant's impairment or combination of impairments meet or medically equal an impairment listed in the Social Security Regulations's "Listings of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). Upon a finding that the claimant meets or medically equals a listing, the claimant is presumed to be disabled and is automatically entitled to benefits. *Id.* § 416.920(d).

When evaluating medical evidence in step three, an ALJ must give controlling weight to, and adopt the medical opinion of, a treating physician if it "is well-supported . . . and is not inconsistent with the other substantial evidence in [the] case record." *Id.* §§ 404.1527(c)(2), 416.927(c)(2). Not inconsistent does not mean that the opinion must "be supported directly by all of the other evidence [i.e., it does not have to be consistent with all the other evidence] so long as there is no other substantial evidence that contradicts or conflicts with the opinion." *Williams v. Barnhart*, 211 F. App'x 101, 103 (3d Cir. 2006). Even where the treating physician's opinion is not required to be given controlling weight, the opinion is not necessarily rejected and may still be

4

entitled to deference "depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). If there is conflicting medical evidence, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Id.*

*Step Four.* If a claimant is not found to be disabled at step three, the analysis continues to step four, in which the ALJ determines whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant lacks the RFC to perform any work she has done in the past, the analysis proceeds.

*Step Five.* In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on her RFC and vocational factors. *Id.* § 404.1520(a)(4)(v).

## B. Standard of Review

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). While failure to meet the substantial evidence standard normally

5

warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Regarding the ALJ's assessment of the record, the Third Circuit has stated, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The Third Circuit noted, however, that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

## III. ALJ OLARSCH'S DECISION

At step one of the analysis, ALJ Olarsch determined that Plaintiff had never engaged in substantial gainful activity ("SGA"). (Tr. at 19). The ALJ noted that although Plaintiff held numerous short-term jobs at the Gap, Wendy's, and Piercing Pagoda,[2] those jobs did not qualify as SGA positions. (*Id.*).

At step two, ALJ Olarsch determined that Plaintiff suffered from the severe impairment of a learning disorder, which had "more than a minimal effect on her ability to perform basic work activities, such as maintaining concentration." (*Id.* at 15). The ALJ determined, however, that

---

[2] The Court notes that "Piercing Pagoda" is spelt phonetically as "Pierson Pagoda" in the transcript of the August 13, 2014 hearing before ALJ Olarsch.

6

Plaintiff's physical impairments of bulging of the septum beneath the aortic valve and syncopal episodes were not severe. (*Id.*). ALJ Olarsch's reasoning was based, in part, on Dr. Marks's (Plaintiff's treating cardiologist) conclusion that Plaintiff's syncopal episodes were caused by low fluid intake and hot weather, and that Plaintiff had experienced "no further syncopal episodes since a cardiac event monitor was placed." (*Id.*).

At step three, ALJ Olarsch found that since March 30, 2012, Plaintiff "did not have an impairment or combination of impairments that m[et] or medically equal[ed] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id.* at 16). He determined that the severity of Plaintiff's mental impairment did not "meet or medically equal the criteria of listings of 12.02 [or] 12.05." (*Id.*). Specifically, he concluded that (i) "paragraph A" criteria of listing 12.05 were not satisfied because Plaintiff was "independent with regard to the activities of daily living and [was] capable of caring for her young daughter"; (ii) "paragraph B" of listing 12.05 were not satisfied because Plaintiff "does not have a valid verbal, performance, or full scale IQ of 59 or less"; (iii) "paragraph C" criteria of listing 12.05 were not satisfied because Plaintiff attained a full-scale IQ score of 72 (above the required full scale IQ of 60 through 70) and did not have "other mental impairment[s] imposing an additional and significant work-related limitation of function"; (iv) "paragraph D" criteria of listing 12.05 were not satisfied because Plaintiff did not have a mental impairment that caused "at least two marked limitations or one marked limitation and repeated episodes of decompensation, each of extended duration"; and (v) "paragraph C" criteria of listing 12.02 were not satisfied partly because Plaintiff was attending school to become a medical assistant, takes care of her young daughter, has a driver's license, and has no psychiatric hospitalizations or partial hospitalizations. (*Id.* at 16-17).

At step four, the ALJ determined that Plaintiff had the RFC to perform heavy work as

defined in Section 204.00, Appendix 1, Subpart P, Regulation No. 4, with no exertional limitations. (*Id.* at 17). ALJ Olarsch held that Plaintiff had an RFC that limited her to occupations with "simple, routine, repetitive tasks involving simple work-related decisions and few workplace changes" that do not involve "exposure to dangerous machinery and unprotected heights." (*Id.*).

At step five, the ALJ concluded that, based on Plaintiff's RFC and the testimony of the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including kitchen helper, cleaner or housekeeper, and photocopying-machine operator. (*Id.* at 20). Accordingly, ALJ Olarsch found that Plaintiff was not disabled as defined in the Act and was therefore ineligible for disability benefits. (*Id.* at 21).

## IV. DISCUSSION

Plaintiff appeals ALJ Olarsch's determinations on steps four and five, arguing "that the substantial evidence in the administrative record establishes entitlement and eligibility for and to" disability benefits. (Pl. Mov. Br. at 9, 14-27). Plaintiff claims that the ALJ's RFC determination was not supported by substantial evidence as it was decided without any evidentiary explanation. (*Id.* at 12). Specifically, Plaintiff contends (among other things) that (i) the ALJ failed to consider the evidence as a whole (*id.* at 14-19); (ii) the ALJ's rejection of Plaintiff's credible testimony was not based on substantial evidence (*id.* at 23-27); and (iii) the ALJ's hypothetical posed to the vocational expert did not include all of Plaintiff's credibly established mental limitations (*id.* at 19-23). Plaintiff asks the Court to reverse the Commissioner's final administrative decision and order the payment of benefits. (*Id.* at 9). Alternatively, Plaintiff asks the Court to remand this case to the Commissioner for a new hearing and a new decision. (*Id.*).

Defendant responds that ALJ Olarsch's RFC determination was supported by substantial evidence and that Plaintiff was capable of performing "substantial gainful employment despite her

8

impairments." (Def. Opp. Br. at 8). Defendant maintains that ALJ Olarsch's RFC determination was actually generous and accounted for all of Plaintiff's credibly established mental limitations. (*Id.* at 9). Defendant also contends that "the ALJ fully recognized that Plaintiff had significant work-related restrictions resulting from her learning disorder," but explained why the totality of the evidence did not support Plaintiff's claims of functional restrictions. (*Id.* at 14).

### A. The ALJ's RFC Determination Is Based on Substantial Evidence

Plaintiff argues that in step four of the evaluation, ALJ Olarsch failed to supplement the RFC determination with an evidentiary explanation and, as a result, the RFC determination was not based on substantial evidence. (Pl. Mov. Br. at 12). Specifically, Plaintiff contends that (i) the ALJ's decision did not mention aspects of Dr. Jack Baharlias's ("Dr. Baharlias") reports, including the "GAF of 50" from the mental status evaluation (*id.* at 11); and (ii) the ALJ unreasonably discredited Plaintiff's testimony and did not provide sufficient reasoning for Plaintiff's non-credibility (*id.* at 23-27).

#### i. *The ALJ Considered All the Evidence as a Whole*

The Court finds that ALJ Olarsch considered all the evidence as a whole, including Dr. Baharlias's reports, when making the RFC determination. "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). When making the ultimate RFC and disability determinations, the ALJ is not required to supplement its determinations with a "comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Instead, the ALJ must explain the analysis of the evidence, while simultaneously not ignoring an entire line of presented

9

evidence. *See Cosby v. Comm'r of Soc. Sec.,* 231 F. App'x 140, 146 (3d Cir. 2007). The ALJ is not required to adopt all limitations assigned by a medical opinion, even if the ALJ assigns the medical opinion significant weight. *See Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014). Finally, a GAF score is not conclusive, but it can reflect the medical professional's notes regarding the patient's symptoms and also quantifies their overall judgment regarding the extent of impairment. *See Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 535 (3d Cir. 2011).

Here, at step four, ALJ Olarsch sufficiently considered all of the evidence in the record when establishing Plaintiff's RFC determination. The ALJ articulated the rationale behind the RFC determination, highlighting specific evidence (including Dr. Baharalias's reports). (Tr. at 17-19). Despite Plaintiff's claim that no psychiatric evidence from the record was recited in the ALJ's decision as a basis for the RFC determination (Pl. Mov. Br. at 18), ALJ Olarsch specifically highlighted Dr. Barharlias's finding that Plaintiff had "borderline intellectual functioning," among other observations (Tr. at 17-18). ALJ Olarsch further noted that when making the RFC determination, "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence" were considered. (*Id.* at 17).

Although ALJ Olarsch did not specifically cite the GAF scores in the RFC determination, he did make specific references to Plaintiff's psychiatric evaluations and IQ score results. (*Id.* at 16-21). The fact that ALJ Olarsch did not explicitly mention all of the evidence in the decision does not mean that the evidence was not considered. *See Jones*, 364 F.3d at 505 (noting that an ALJ does not need "to use particular language or adhere to a particular format" in the analysis, so long as "there is sufficient development of the record and explanation of findings to permit meaningful review"). Here, the Court finds that ALJ Olarsch clearly articulated the reasoning behind the RFC determination to permit meaningful review. (Tr. at 16-21).

Plaintiff also argues that ALJ Olarsch excluded the report of the home instructor, Ms. Geiter, when making the RFC determination. (Pl. Mov. Br. at 13). But contrary to Plaintiff's claim, the ALJ specifically highlighted Ms. Geiter's report in the analysis leading to the RFC determination. (Tr. at 16). ALJ Olarsch articulated aspects of the home instructor's records, including statements that Plaintiff "follows directions on assignments well, is able to read the material at hand, and is always eager and willing to learn," but has "organizational skills and reading ability . . . significantly below grade level . . . affect[ing] her in all academic areas." (*Id.*). Accordingly, the ALJ appropriately addressed the home instructor's report when making the RFC determination.

Plaintiff further claims that ALJ Olarsch did not explain why some evidence was more convincing than other evidence or which evidence contradicted his finding. (Pl. Mov. Br. at 16). Plaintiff's claim is unpersuasive. Indeed, ALJ Olarsch spent a lengthy portion of the analysis weighing Plaintiff's testimony of difficulty in school against the objective medical reports. (Tr. at 17-19). In fact, the ALJ explicitly acknowledged that Plaintiff was "having a hard time passing her courses and if she fails again she will not be able to attend school." (*Id.* at 18). The ALJ also pointed out that, while the normal training time for the vocational school usually takes nine months, Plaintiff has been in the program for over a year and often "needs additional instructions and attention from the teacher" given her "difficulty with written and spoken instructions." (*Id.*). The ALJ was persuaded, however, by Dr. Barharlias's report that Plaintiff "was able to understand the standardized instructions for the WAIS-IV" and was not in need of further individualized instructions. (*Id.*). Further, ALJ Olarsch considered the fact that the "disability interviewer observed no difficulties" regarding Plaintiff's ability to understand instructions. (*Id.*). In light of

11

the foregoing, the Court finds that ALJ Olarsch considered all of the evidence in the record as a whole, and the RFC determination is based on substantial evidence.

      *ii.*  ***The ALJ's Credibility Determination of Plaintiff's Testimony is Based on Substantial Evidence***

Next, Plaintiff contends that the ALJ's rejection of Plaintiff's subjective testimony was not based on substantial evidence. (Pl. Mov. Br. at 23-27). The ALJ must consider "all of the available evidence" when evaluating the intensity and persistence of a claimant's symptoms, including objective medical evidence and a claimant's statements about his symptoms. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); *see also Hartranft*, 181 F.3d at 362 ("This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it."). But an ALJ is not required to accept a claimant's testimony without question; the ALJ has discretion to evaluate a claimant's credibility and render an independent judgment in light of the medical findings and other evidence regarding the true extent of the alleged symptoms. *See Malloy v. Comm'r of Soc. Sec.,* 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make."). Further, a claimant will not be found disabled due to lack of motivation or lack of interest in working or performing a particular job. 20 C.F.R. § 416.966(c)(8); *see also Durgin v. Astrue*, No. 07-0063, 2008 WL 4181162, at *12 (N.D. Iowa May 8, 2008) ("Social Security benefits are not awarded for individuals who are unemployed because they do not wish to work.").

The Court finds that the ALJ's credibility determination of Plaintiff's subjective testimony is supported by substantial evidence. The ALJ acknowledged Plaintiff's difficulties while attending vocational school, including the inability to comprehend some of the material and the need for additional instructions and attention from the teacher. (Tr. at 18-19). Plaintiff's

testimony, however, was weighed against the observations of the disability interviewer and Dr. Baharlias's opinion that Plaintiff had no difficulty understanding standardized instructions. (*Id.* at 18). ALJ Olarsch also considered Plaintiff's testimony during the hearing and her past short-term work history in concluding that Plaintiff's inability to maintain her past jobs was due to her lack of motivation to perform work obligations promptly. (*Id.* at 19; *see also id.* at 42-45 (providing that Plaintiff testified that "I just take my time because I want to")).

Plaintiff further argues that there is "not one shred of psychiatric evidence" cited in the decision indicating that she would be capable of sustaining a full-time job performing simple work activity. (Pl. Mov. Br. at 18). But ALJ Olarsch explained why, despite having a learning disability, Plaintiff would be able to hold a full-time job: the ALJ highlighted Plaintiff's ability to maintain part-time jobs while attending high school and noted that Plaintiff's IQ scores were in the "borderline range of intellectual functioning." (Tr. at 18). The ALJ explained, for example, that (i) Plaintiff obtained a full-scale IQ of 72 on the WAIS-IV; (ii) her other scores ranged from 74-78; and (iii) on the WPPSI-III, Plaintiff obtained a "full scale IQ of 81; a performance IQ of 86; and a verbal IQ of 80." (*Id.*).

Moreover, the ALJ purposefully placed minimal weight on the findings of Dr. Joynson, the State Agency medical consultant, and gave greater weight to Plaintiff's testimony, thereby restricting her to simple, routine, and repetitive tasks with few workplace changes and simple work-related decisions. (*Id.* at 19). Dr. Joynson had concluded that Plaintiff had non-severe borderline intellectual functioning due to no episodes of decompensation, no difficulties in maintaining social functioning, mild restriction of the activities of daily living, and mild difficulties in maintaining concentration, persistence, or pace. (*Id.*). Still, ALJ Olarsch decided to give lesser weight to Dr. Joynson's opinion regarding Plaintiff's mental limitations. (*Id.*). And the ALJ

13

appreciated Plaintiff's difficulty in succeeding in her vocational school courses (noting the fact that Plaintiff has not completed the training within the normal time) and specifically recommended jobs that did not involve Plaintiff becoming a medical assistant. (*Id.* at 18-20). Plaintiff's argument ignores that the ALJ acknowledged Plaintiff's difficulty with performing complex tasks and awarded significantly lesser weight to the opinion of Dr. Joynson.

After examining all of the evidence, including Plaintiff's testimony, the ALJ reasoned that Plaintiff's statements "concerning the intensity, persistence and limiting effects" of her symptoms were not entirely credible. (*Id.* at 18). ALJ Olarsch properly exercised discretion in assessing the credibility of Plaintiff's testimony (including Plaintiff's subjective complaints) and accorded it due weight in light of all the evidence in the record.

Given the evidence from the record that the ALJ highlighted, the Court finds that the ALJ's RFC determination was based on substantial evidence.

### B. The Hypothetical Posed to the Vocational Expert Included All of Plaintiff's Credibly Established Mental Limitations

Finally, Plaintiff argues that the ALJ did not include all of Plaintiff's credibly established mental limitations in the hypothetical posed to the vocational expert.[3] (Pl. Mov. Br. at 19-23). The Court disagrees.

An ALJ's hypothetical question need not include "every impairment *alleged* by a claimant," but only those that are "medically established." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis in original). To the extent that Plaintiff's attack on the hypothetical is that all her alleged impairments were not addressed, she in essence is making another attack on

---

[3] ALJ Olarsch posed the following hypothetical to the vocational expert: "Assume an individual of the claimant's age, education, and work experience, with the residual functional capacity noted above. Could this individual do her past work or any other work existing in significant numbers in the national economy?" (Tr. at 19).

the RFC finding itself, which the Court has already rejected. *See id.* at 554 n.8. Moreover, a hypothetical question limiting the claimant to "simple, routine tasks" adequately accounts for moderate limitations in concentration, persistence, or pace. *See McDonald v. Astrue*, 293 F. App'x 941, 946 (3d Cir. 2008); *Menkes v. Astrue*, 262 F. App'x 410, 412-13 (3d Cir. 2008); *Torres v. Barnhart*, 139 F. App'x 411, 416-17 (3d Cir. 2005).

Here, the ALJ determined that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace. (Tr. at 16). And the ALJ's hypothetical question to the vocational expert limited Plaintiff to "simple, routine, repetitive tasks," along with other definitive limitations. (*Id.* at 46). Therefore, the Court finds that ALJ's Olarsch's hypothetical posed to the vocational expert adequately captured all of Plaintiff's medically established mental limitations.

## V. CONCLUSION

For the foregoing reasons, the Court hereby AFFIRMS ALJ Olarsch's decision and DENIES Plaintiff's appeal. An appropriate Order accompanies this Opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**